**[J-16-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 56 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated February 24, |
| | : | 2020 at No. 3339 EDA 2018 |
| v. | : | Affirming the PCRA Order of the |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, |
| JAMES HENRY COBBS, | : | dated October 23, 2018 at No. CP- |
| | : | 46-CR-287-1979. |
| Appellant | : | |
| | : | SUBMITTED: January 22, 2021 |

**OPINION**

**CHIEF JUSTICE BAER**                                    **DECIDED: August 17, 2021**

The offense of assault by a life prisoner is defined, in relevant part, as aggravated assault with a deadly weapon or instrument by an individual "who has been sentenced to death or life imprisonment" and "whose sentence has not been commuted;" the penalty for that offense is life imprisonment. 18 Pa.C.S. § 2704. The issue presented in this appeal, which arises under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 ("PCRA"), is whether Appellant James Henry Cobbs' conviction of assault by a life prisoner is vitiated where a court subsequently vacated his predicate sentence of life imprisonment on grounds that it violated the Eighth Amendment to the United States Constitution, and resentenced him on the underlying offense to a term of 40 years to lifetime incarceration. We hold that under the circumstances presented, Appellant's life sentence imposed for his conviction of assault by a life prisoner cannot stand.

Accordingly, we vacate the Superior Court's judgment, which affirmed the PCRA court's order dismissing Appellant's PCRA petition. We further reverse the PCRA court's order and vacate Appellant's judgment of sentence and his related conviction under Section 2704.

*I. Background*

The record establishes that more than 50 years ago on October 14, 1970, when Appellant was 17 years old, he and 15 year-old Michael Perkins engaged in a robbery in Allegheny County during which James Brislin was stabbed to death. The evidence demonstrated that while Appellant participated in the robbery, Perkins admitted to police that he was the one who fatally stabbed Brislin. Following a jury trial, Appellant was convicted of first degree murder based on a theory of felony murder.[1] On May 27, 1972, the Allegheny County Court of Common Pleas sentenced him to the mandatory sentence of life imprisonment without the possibility of parole. This Court affirmed Appellant's judgment of sentence on direct appeal. *Commonwealth v. Cobbs*, 305 A.2d 25 (Pa. 1973).

On December 18, 1978, when Appellant was 25 years old and serving his life sentence at SCI-Graterford in Montgomery County, he stabbed a fellow inmate in the forehead during an altercation. As a result, he was charged under Section 2704 of the Crimes Code. As noted, at the time of the offense, this provision stated:

> Every person who has been sentenced to death or life imprisonment in any penal institution located in this Commonwealth, and whose sentence has not been commuted, who commits an aggravated assault with a deadly weapon or instrument upon another, or by any means of force likely to

---

[1] Today, a criminal homicide constitutes second degree murder when it is committed while the defendant was engaged in the perpetration of a felony. 18 Pa.C.S. § 2502(b).

produce serious bodily injury, is guilty of a crime, the penalty for which shall be the same as the penalty for murder of the second degree.[2]

18 Pa.C.S. § 2704.[3]

In 1979, a Montgomery County jury convicted Appellant of assault by a life prisoner and related offenses. Bound by Section 2704, the Montgomery County Court of Common Pleas sentenced Appellant to a second term of life imprisonment without parole for that offense, to run concurrently with the sentence of life imprisonment imposed for his prior Allegheny County murder conviction. *See* N.T., Sentencing Hearing, 8/17/1979, at 4-5 (sentencing court judge acknowledging that the "law gives me no choice but to impose a life sentence and, secondly, I think that under all the circumstances a life sentence consecutive in this case would be improper and so I am going to make it concurrent"). The Superior Court affirmed Appellant's judgment of sentence, *Commonwealth v. Cobbs*, 431 A.2d 335 (Pa. Super. 1981), and this Court denied allowance of appeal. *Commonwealth v. Cobbs*, 181 E.D. Alloc. Dkt 1982.

In 2012, decades after Appellant was convicted of first degree murder and assault by a life prisoner, he filed petitions for post-conviction relief in both Allegheny and Montgomery Counties.[4] The Allegheny County PCRA petition, which is not at issue in this appeal, challenged Appellant's sentence of life imprisonment without parole imposed

---

[2] Section 1102(b) of the Crimes Code provides that "a person who has been convicted of murder of the second degree . . . shall be sentenced to a term of life imprisonment." 18 Pa.C.S. § 1102(b).

[3] In 1998, the General Assembly amended Section 2704 by adding language providing that a person is guilty of assault by a life prisoner if he intentionally or knowingly causes another to come into contact with infected bodily fluids. Act 1998-19 (S.B. 635), P.L. 102, § 3, approved Feb. 18, 1998. The statutory language cited above remains the same.

[4] Appellant had also filed a petition for post-conviction relief in 1986, raising claims unrelated to this appeal. The trial court denied relief, and the Superior Court affirmed. *Commonwealth v. Cobbs*, 528 A.2d 255 (Pa. Super. 1987), *appeal denied*, 539 A.2d 810 (Pa. 1987).

for his conviction of first degree murder, which he committed when he was a juvenile. In seeking a new sentencing hearing, Appellant relied upon the United States Supreme Court's then-recent decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment.'" *Id.* at 465.

At issue in this appeal is Appellant's PCRA petition filed in the Montgomery County Court of Common Pleas ("PCRA court") on August 20, 2012. Therein, Appellant, acting *pro se*, contended that his life sentence without parole imposed for his conviction of assault by a life prisoner, which was predicated upon his status as a life prisoner at the time of the assault, was rendered unconstitutional under the Eighth Amendment pursuant to the High Court's decision in *Miller*.

On February 11, 2013, the PCRA court filed a notice of intent to dismiss the instant PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907 on grounds that the petition was filed untimely.[5] Cognizant that a PCRA petition shall be filed within one year of the date the judgment becomes final, 42 Pa.C.S. § 9545(b)(1), Appellant asserted in his response to the notice to dismiss that his petition fell under the exception to the timeliness requirement providing that "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S. § 9545(b)(1)(iii). Appellant contended that his PCRA

---

[5] Pennsylvania Rule of Criminal Procedure 907 ("Disposition Without Hearing") sets forth the general rule that if the PCRA court is satisfied that there are no genuine issues concerning any material fact relating to a PCRA petition, that the defendant is not entitled to post-conviction collateral relief, and that no purpose would be served by further proceedings, the PCRA court must give notice to the parties of its intention to dismiss the petition and the reasons therefor. Pa.R.Crim.P. 907(1).

petition was timely filed within the 60-day period then required for exceptions to the timeliness requirement set forth in Section 9545(b)(2), as the High Court decided *Miller* on June 25, 2012, and Appellant's PCRA petition was filed on August 20, 2012. [6] He further requested a hearing on his petition.

Appellant's PCRA petition remained pending and no action was taken in connection therewith until March 22, 2016, when counsel entered an appearance for Appellant and filed a request for leave to file an amended PCRA petition. The PCRA court granted leave to file an amended PCRA petition, and counsel did so on December 30, 2016. Therein, Appellant contended that within the last 60 days, the High Court had declared in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), that *Miller's* constitutional ban on imposing mandatory life-without-parole sentences on juveniles applied retroactively.[7]

Because Appellant was a juvenile when he committed the first degree murder, he maintained that he was entitled to a new sentencing hearing in connection with his pending Allegheny County PCRA petition, which challenged the mandatory life-without-parole sentence he received for that offense. Notably, Appellant further argued that if the court resentenced him to a term other than life imprisonment without parole on his initial murder charge, he would be entitled to post-conviction relief in this case relating to the

---

[6] In 2018, the General Assembly amended Section 9545(b) to extend the 60-day period for filing a PCRA petition invoking an exception to the timeliness requirement to one year from the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(2); Act of October 24, 2018, P.L. 894, No. 146, § 2. Because the Act amending Section 9545(b)(2) provided that the one-year period applies only to timeliness exception claims arising on or after December 24, 2017, the amendment has no applicability here.

[7] The High Court's decision in *Montgomery* effectively overruled this Court's contrary ruling in *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013) (holding that the proscription of the imposition of mandatory life-without-parole sentences upon offenders under the age of 18 at the time their crimes were committed did not extend to those whose judgments of sentence were final as of the time *Miller* was decided).

mandatory life-without-parole sentence imposed pursuant to Section 2704 for his subsequent assault by a life prisoner conviction. By order dated February 27, 2017, the PCRA court directed that the instant PCRA petition be held in abeyance pending resolution of Appellant's Allegheny County PCRA petition challenging his sentence imposed for first degree murder.

On September 18, 2017, in compliance with *Miller* and *Montgomery*, the Allegheny County Court of Common Pleas granted Appellant's request for post-conviction relief in the form of a new sentencing hearing on his first degree murder conviction. A resentencing hearing was held on September 19, 2017, during which the Commonwealth and Appellant agreed to a sentence of 40 years to life imprisonment with credit for time served from the date of Appellant's arrest on October 28, 1970. Having already served nearly 47 years of incarceration, Appellant's new murder sentence allowed for the possibility for parole on that conviction. *See* N.T., Resentencing Hearing, 9/19/2017, at 40.

After reviewing the evidence presented at the hearing, the Allegheny County Court of Common Pleas accepted the parties' agreement and sentenced Appellant on his first degree murder conviction to 40 years to life imprisonment, with credit for time served. The trial court summarized the evidence supporting imposition of that sentence as follows: that Appellant was 17 years old at the time of the murder and was subject to peer pressure and mental health issues; that Appellant did not actually commit the murder, but participated in the robbery and was convicted based upon a felony murder theory; that Appellant's mother died when he was 14 years old and that he thereafter lived with his sister and various siblings in a very stressful home environment; and that Appellant was nearly illiterate at the time he entered prison. *Id.* at 41. While recognizing his responsibility for the murder, the court informed Appellant that "it's not that you are going

to rehabilitate, it is you have rehabilitated and you have changed your life." *Id.* at 42. The court cited the wonderful reviews Appellant received from the prison bakery where he worked and his strong family support, particularly that of his nephew who was in a position to assist him in obtaining employment if he were paroled. *Id.*

On October 4, 2017, shortly after the Allegheny County Court of Common Pleas vacated Appellant's sentence of life imprisonment without parole for murder, the PCRA court in the instant case granted Appellant leave to file a second amended PCRA petition challenging his assault by a life prisoner conviction. In that petition, Appellant contended that he was serving an illegal sentence for assault by a life prisoner, a claim that he alleged was both cognizable under the PCRA and filed timely. He reiterated that his petition satisfied Section 9545(b)(1)(iii), which provides an exception to the timeliness requirement where the right asserted is a constitutional right that has been held to apply retroactively, and Section 9545(b)(2), which required petitions alleging an exception to the time bar to be filed within 60 days of the date the claim could have been presented. Specifically, Appellant asserted that he filed the original PCRA petition within 60 days of when *Miller* was decided, and filed his amendment to the petition within 60 days of when *Montgomery* was decided.

Regarding the merits of the claim, Appellant contended that his life sentence without parole for his prison assault conviction arose directly from his status as a lifetime inmate, and that the constitutional rights recognized in *Miller* and *Montgomery* eliminated that condition precedent, thereby rendering his life sentence under Section 2704 illegal. Acknowledging that *Miller* and *Montgomery* do not apply to assaults committed by adult inmates, Appellant maintained that a retroactive application of *Miller* meant that his life sentence for murder committed as a juvenile was always unconstitutional; thus, he was

not a "life prisoner" for purposes of Section 2704, and he could never have been lawfully punished under Section 2704 for being a life prisoner.

Defining "life imprisonment" for purposes of Section 2704 as "life imprisonment without parole," Appellant further contended that his new sentence of 40 years to lifetime imprisonment could not support a conviction under Section 2704. He asserted that he is not a life inmate for purposes of Section 2704 as he has now been granted a sentence that has a minimum term of incarceration less than life imprisonment, which would make him eligible to seek parole because he has already served the minimum term of imprisonment. Finally, Appellant posited that Section 2704 excludes sentences of life imprisonment that have been commuted, *see* 18 Pa.C.S. § 2704 (encompassing within the definition of those guilty under Section 2704 "every person who has been sentenced to death or life imprisonment . . . whose sentence has not been commuted . . ."), and likened his reduced sentence to a commutation.

The Commonwealth filed an answer and motion to dismiss Appellant's PCRA petition. It contended that the petition was untimely filed because Appellant's judgment of sentence became final in 1982, upon conclusion of direct review, and he did not file the current PCRA petition until almost three decades later in 2012. The Commonwealth asserted that even where the underlying claim involves the legality of sentence, the court may only entertain the claim if it has jurisdiction to do so. Disputing Appellant's claim that the newly-recognized constitutional right exception to the timeliness requirement applies, the Commonwealth argued that the High Court's decisions in *Miller* and *Montgomery* were inapplicable because Appellant was not a juvenile at the time he assaulted the inmate.

Characterizing Appellant's claim as a mere challenge to the sufficiency of the evidence supporting his conviction for assault by a life prisoner, as opposed to a claim alleging an illegal sentence, the Commonwealth further contended that the claim was not

cognizable under the PCRA. Finally, the Commonwealth posited that even if Appellant's initial life sentence imposed for murder could not support his assault by a life prisoner conviction, his new sentence of 40 years to life imprisonment is sufficient to support the conviction because it is the maximum term in Pennsylvania that represents the sentence imposed for a criminal offense, with the minimum term merely setting the first possible parole date.

On October 5, 2018, the PCRA court again issued a notice of intent to dismiss Appellant's petition without a hearing on the ground that it was filed untimely. Appellant responded to the notice, reiterating the timeliness arguments that he had asserted in his second amended petition. The PCRA court ultimately dismissed Appellant's PCRA petition as untimely filed on October 23, 2018. In its subsequent opinion filed March 7, 2019, the PCRA court opined that Appellant's judgement of sentence became final for purposes of the PCRA on September 2, 1982, the expiration date for seeking *certiorari* in the United States Supreme Court. PCRA Court Opinion, 3/7/2019, at 4 (citing 42 Pa.C.S. § 9545(b)(3) (providing that "[f]or purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review")). Concluding that Appellant had until September 2, 1983, to file a timely PCRA petition, the PCRA court found that his petition filed almost three decades later in 2012, was facially untimely. *Id.*

The PCRA court rejected Appellant's contention that the newly-recognized constitutional right exception to the timeliness requirement applied, reasoning that the High Court's decision in *Miller* prohibited only a sentence of mandatory lifetime incarceration without parole for individuals who were minors at the time they committed their offenses. Because Appellant committed the assault on the inmate when he was 25

years old, the PCRA court found that *Miller* did not apply and that Appellant, thus, failed to overcome the jurisdictional time bar. *Id.*

The Superior Court affirmed the order of the PCRA court. *Commonwealth v. Cobbs*, 230 A.3d 388 (Pa. Super. 2020). Initially, however, the court agreed with Appellant that the PCRA court erred in concluding that his PCRA petition was filed untimely. The Superior Court acknowledged that the United States Supreme Court: (1) recognized a new constitutional right in *Miller* that mandatory life imprisonment without parole is unconstitutional for crimes committed when the defendant was under the age of 18; and (2) held that right to apply retroactively in *Montgomery*. *Id.* at 392. The court reasoned that "[b]ecause Appellant is challenging his assault by a life prisoner conviction on the ground that *Miller* and *Montgomery [ ]* invalidated a predicate on which that conviction necessarily depended, he is not seeking to extend these decisions to a new class of defendants or cases, but is raising an issue that arises based upon the alleged direct effect of the newly recognized and retroactive constitutional right on his conviction." *Id.* (footnote omitted). Accordingly, the Superior Court found that Appellant's PCRA petition was filed timely, as it was filed within 60 days of the Court's ruling in *Miller* and the PCRA petition remained pending when *Montgomery* was decided and when Appellant was resentenced under those decisions on the murder charge. *Id.*

The Superior Court, therefore, proceeded to examine the merits of Appellant's contention that *Miller* and *Montgomery* invalidated his conviction for assault by a life prisoner. To resolve the issue, the court deemed it necessary to answer two inquiries: "1) whether a subsequent vacating of the underlying life sentence affects the validity of an assault by a life prisoner conviction for an assault that occurred while the life sentence was in effect; and if so, 2) whether Appellant's current sentence of 40 years to life constitutes a sentence of 'life imprisonment' under 18 Pa.C.S. § 2704." *Id.*

The Superior Court viewed the initial issue as one of first impression and began its analysis by examining the text of Section 2704, emphasizing that the provision applies to a defendant "who **has been** sentenced to . . . life imprisonment . . . and whose sentence **has not been** commuted." *Id.* at 393 (emphasis in original) (citing 18 Pa.C.S. § 2704). The court interpreted this language as referring to the defendant's status at the time the assault was committed, and not any future event. The court found that the statute did not include any language providing that the life sentence must survive a subsequent court challenge commenced after the assault occurred. *Id.*

The Superior Court further observed that the purpose of Section 2704 is to deter prisoners who are already serving a life sentence from committing assaults while in prison. *Id.* at 393 (citing *Commonwealth v. Dessus*, 396 A.2d 1254, 1257 (Pa. Super. 1978), and *Commonwealth v. Bryant*, 361 A.2d 350, 351-52 (Pa. Super. 1976)). The court held that "both the language of Section 2704 and its deterrent purpose strongly support the conclusion that it is the existence and status of the life sentence at the time of the assault that is an element of the crime and that subsequent invalidation of that sentence does not negate this element." *Id.* at 393. The Superior Court determined that the statute's purpose of deterrence would best be served by applying the provision to assaults committed while under a life sentence, even though that sentence was later vacated. *Id.*

The Superior Court found that Section 2704 was analogous to firearm statutes that define an offense based upon the defendant's status as having been convicted of enumerated crimes, which have been held by various courts to remain unaffected by subsequent reversal, expungement, or constitutional invalidation of the predicate offense. *Id.* (citing *Commonwealth v. Stanley*, 446 A.2d 583, 588 n.6 (Pa. 1982) (stating that a subsequent reversal of a murder conviction on which an illegal possession of firearms

charge was predicated did not affect the firearms offense because the defendant "was an individual convicted of a 'crime of violence' at the time he was charged with possessing the firearm"); *Lewis v. United States*, 445 U.S. 55, 65 (1980) (holding that a collateral claim that a prior conviction was constitutionally invalid because of a denial of the right to counsel was not a defense to a federal firearms offense in violation of former 18 U.S.C. § 1201(a)(1) (since repealed) where the prior conviction had not been set aside at the time the offense was committed); and *United States v. Julian*, 974 F. Supp. 809, 817 (M.D. Pa. 1997), *aff'd without opinion*, 168 F.3d 480 (3ᵈ Cir. 1998) (holding that the subsequent setting aside of a predicate conviction for lack of jurisdiction and expungement of the conviction "after an arrest for possession of a firearm by a felon does not 'relate back' and render the firearm possession lawful").

Accordingly, the Superior Court concluded that only a defendant's sentence status at the time of the assault is relevant to a conviction of assault by a life prisoner, and that a subsequent reversal of the predicate life sentence has no effect on the Section 2704 conviction.[8]  *Id.* at 394.  Acknowledging that its conclusion in this regard appears anomalous because Appellant can be released on parole on a murder sentence while being subject to life imprisonment without parole on an assault sentence, the court posited that this result arises from the fact that Appellant was a juvenile when he committed the murder, but was an adult when he committed the prison assault.  *Id.*

The Superior Court further opined that because it had previously upheld the constitutionality of Section 2704's mandatory sentence of life imprisonment without parole, *see Commonwealth v. Dessus*, 396 A.2d at 1257; *Commonwealth v. Bryant*, 361

---

[8] The Superior Court concluded that due to its disposition of this initial inquiry, it need not examine whether Appellant's new sentence of 40 years to life constitutes a life sentence for purposes of Section 2704.  *Id.*

A.2d at 351-52, and Appellant does not challenge that previous ruling, his assault by a life prisoner and life sentence without parole for that offense remains valid.[9] *Cobbs*, 230 A.3d at 394. Finally, the court concluded that Appellant's argument that his life sentence imposed for assault by a life prisoner is unwarranted due to the facts surrounding the case and his subsequent rehabilitation must be directed to the Board of Pardons and the Governor, rather than the courts. *Id.*

This Court subsequently granted allowance of appeal to address the following issue:

> Where a prisoner's constitutionally infirm life-without-parole sentence for murder committed while a minor formed the basis for a conviction of assault by a life prisoner under 18 Pa.C.S. § 2704 committed as an adult, and the prisoner is re-sentenced to forty-years-to-life on the original murder conviction, is the Section 2704 conviction vitiated by such re-sentencing?

*Commonwealth v. Cobbs*, 239 A.3d 8 (Pa. 2020).

## II. The Parties Arguments

Appellant contends that the Superior Court erred by holding that his conviction and sentence for assault by a life prisoner remained valid after the court vacated his predicate mandatory sentence of life imprisonment without parole imposed for murder. The fatal flaw in the Superior Court's analysis, he submits, is its conclusion that his assault by a life prisoner conviction survives because he was serving a life sentence at the time he committed the assault, and, thus satisfied the requisites of Section 2704. This analysis,

---

[9] In *Commonwealth v. Dessus*, the Superior Court held that Section 2704's mandatory life sentence did not violate the prohibition on cruel and unusual punishments imposed by the United States and Pennsylvania Constitutions, even though the provision does not provide for consideration of particular mitigating and aggravating circumstances surrounding the charged offense. *Dessus*, 396 A.2d at 1257. In so concluding, the court relied upon its previous decision in *Commonwealth v. Bryant*, 361 A.2d 350 (Pa. Super. 1976), which held that the mandatory sentence in Section 2704 was not so disproportionate to the offense so as to constitute cruel and unusual punishment, as the Legislature saw fit to specify that sanction as a deterrent to punish assaults committed by prisoners who were serving life terms.

he contends, erroneously focuses exclusively upon the statutory text and deterrent purpose of Section 2704, and ignores the governing constitutional analysis regarding the retroactive application of the substantive rule of law set forth in *Miller* and its direct effect on Appellant's prisoner-assault conviction.

Appellant observes that in *Miller*, the High Court declared that a sentencing scheme mandating sentences of life imprisonment without parole for juveniles violates the Eighth Amendment because "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." Brief for Appellant at 9 (quoting *Miller,* 567 U.S. at 479). According to Appellant, *Montgomery* clarified that *Miller* requires more than just a consideration of an offender's age, it also requires an acknowledgement that life without parole is a "disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption,'" "permanent incorrigibility," and "such irretrievable depravity that rehabilitation is impossible." *Id.* (quoting *Montgomery*, 136 S.Ct. at 733-34).

Critically, Appellant explains, the High Court in *Montgomery* held that its declaration in *Miller* constituted a substantive rule of constitutional law that applied retroactively. Appellant gleans special significance from the following passage in *Montgomery* regarding retroactivity:

> A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, **void**. *See* [*Ex parte Siebold*, 100 U.S. 371, 376 (1880)]. It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced.

Brief of Appellant at 17 (quoting *Montgomery,* 136 S.Ct. at 73 (emphasis supplied by Appellant)).

Appellant concludes that *Miller* and *Montgomery* rendered his original sentence of life without parole imposed for murder illegal and void *ab initio*, and because that sentence constituted a necessary element supporting his conviction for assault by a life prisoner, those decisions likewise rendered invalid his prisoner-assault conviction and sentence under Section 2704. Thus, he concludes, the Commonwealth was barred from inflicting the mandatory punishment under Section 2704 where the predicate offense of his prisoner-assault conviction was an illegal mandatory life sentence imposed for an offense Appellant committed as a youth.[10] Accordingly, Appellant submits, the Superior Court's decision to the contrary ignores the plain meaning of the term "retroactive," and negates the High Court's holdings in *Miller* and *Montgomery*.[11]

In support of this contention Appellant relies on this Court's decision in *Commonwealth v. McIntyre*, 232 A.3d 609 (Pa. 2020). There, the defendant was convicted in 2012 of failing to register as a sex offender under 18 Pa.C.S. § 4915. In 2013, this Court concluded in *Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013), that

---

[10] Appellant contends that the Commonwealth contested this conclusion in the lower courts relying upon *Commonwealth v. Ciccone*, 152 A.3d 1004 (Pa. Super. 2016), which held that a statute that was abrogated was not rendered void *ab initio* by a subsequent change in the law. Appellant distinguishes *Ciccone* from this case on the ground that it did not address whether a sentence rendered invalid by a retroactively applied constitutional right is void *ab initio,* as the relevant claim in *Ciccone* arose from a change in the law resulting from the High Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), which was held expressly not to apply retroactively. Further, Appellant contends, unlike in *Ciccone*, he did not challenge the constitutionality of the statute under which he was prosecuted, but claimed only that the statute did not apply to him because he was never a life prisoner.

[11] Appellant further asserts that he is one among several individuals who were erroneously classified as a life prisoner under Section 2704 due to an unconstitutional predicate juvenile sentence of life without parole. He submits that several of these individuals under identical circumstances have been released from prison or will be eligible for release upon their resentencing, *see* Brief for Appellant at 12 (collecting cases), and urges the same result here.

Section 4915 was unconstitutional in its entirety. This Court reversed the defendant's judgment of sentence even though his conviction and sentence predated the *Neiman* decision, opining that upholding his sentence and conviction would "violate principles of due process, inasmuch as there was no validly-enacted criminal statute on which the Commonwealth could base Appellant's conviction." *McIntyre*, 232 A.3d at 619. Appellant argues that similarly, upholding his sentence and conviction for assault by life prisoner would violate due process as there was no validly-imposed predicate life sentence upon which the Commonwealth could base his conviction.[12]

Appellant further contends that the Superior Court's reliance upon cases upholding firearm convictions after predicate offenses have been invalidated is misplaced as the context of the analysis is distinct. For example, he submits, in *Lewis v. United States*, *supra*, the High Court applied a rational basis analysis to conclude that even constitutionally invalid felony convictions could serve as predicate convictions for unlawful firearm possession charges where the firearm ownership was considered a "civil disability." Brief for Appellant at 15 (citing *Lewis*, 445 U.S. at 67). To the contrary, Appellant asserts, at issue here is the ultimate restraint on physical liberty, and not a mere civil disability. Moreover, he maintains, in *Lewis*, the Court found that the "federal gun laws. . . focus not on reliability, but on the mere fact of conviction, or even indictment, in

---

[12] Appellant contends that the Superior Court reached a similar conclusion in *Commonwealth v. Zeno*, 232 A.3d 869 (Pa. Super. 2020), where the defendant pled guilty to offenses committed at ages 14 and 16 requiring him to register as a sex offender in 2007. On appeal, the Superior Court ordered the trial court to vacate the sentencing requirement because Pennsylvania law no longer required individuals who were minors at the time of their offense to register as sex offenders. *Id.* at 872 (citing *Commonwealth v. Haines*, 222 A.3d 756, 759 (Pa. Super. 2019)). Even though *Haines* was decided more than a decade after Zeno's offenses, Appellant submits that the court still remedied his disposition, which was based on an invalid statutory requirement. *Id.* Likewise, Appellant argues, this Court should vacate his assault by a life prisoner conviction which is based on an unconstitutional sentence imposed on him as a youth.

order to keep firearms away from potentially dangerous persons." *Id.* Appellant reiterates that the General Assembly's inclusion of a commutation exception in Section 2704 suggests a legislative intent that focuses on the reliability of the conviction, not the mere existence thereof, due to the undeniable liberty interests at play.

Having concluded that his predicate life sentence is invalid to support his conviction and sentence for assault by a life prisoner, Appellant proceeds to argue that his new sentence of 40 years to life imprisonment imposed upon resentencing for the murder conviction likewise cannot support his Section 2704 conviction. Acknowledging that the Superior Court did not reach this issue as it concluded that the predicate conviction remained valid, Appellant argues that his new sentence constitutes a term of years, permitting the potential for parole, as opposed to life imprisonment without parole.

Thus, he maintains, the new sentence cannot be construed as "life imprisonment" as employed in Section 2704. Citing myriad of cases establishing that "life imprisonment" in Pennsylvania connotes life imprisonment without parole, *see* Brief for Appellant at 12-13, Appellant submits that an individual who is eligible for parole is exempt from the punishment enumerated in Section 2704, as the individual is not a life prisoner. This is true, Appellant asserts, even when one's maximum sentence may potentially extend to the full term of his or her lifetime. Appellant submits that the General Assembly's insertion of a "commutation" exclusion in Section 2704 (encompassing everyone sentenced to death or life imprisonment "whose sentence has not been commuted . . .") reveals a legislative intent to exempt those who are eligible for parole from the sentencing requirements of the provision.

Accordingly, Appellant requests that we reverse the Superior Court's judgment, affirming the PCRA court's dismissal of his petition, and vacate his conviction of assault by a life prisoner.

Preliminarily, the Commonwealth responds by requesting that we dismiss this appeal as improvidently granted on the grounds that Appellant's PCRA petition is time-barred and fails to present a cognizable claim under the PCRA. The Commonwealth argues that Appellant's PCRA petition is facially untimely as it was filed decades after his judgment of sentence became final. It further contends that the newly-recognized constitutional right exception to the PCRA time bar is inapplicable because the holdings in *Miller* and *Montgomery* apply to offenses committed by juveniles, and Appellant was 25 years of age when he committed the assault by a life prisoner offense at issue. Absent an exception to the PCRA's timeliness requirement, the Commonwealth asserts, Appellant's PCRA petition is time-barred and the Court lacks jurisdiction to entertain the merits of the claim asserted therein. Brief for Appellee at 11 (citing *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (holding that where a PCRA petition is filed untimely, courts do not have jurisdiction to address the substantive claims raised therein)).

The Commonwealth further posits that even if timely filed, Appellant's PCRA petition raises only a non-cognizable challenge to the sufficiency of the evidence supporting his conviction of assault by a life prisoner by claiming that the "life sentence" element has not been satisfied. According to the Commonwealth, the PCRA does not encompass such claim. Brief for Appellee at 21-22 (citing *Commonwealth v. Bell*, 706 A.2d 855, 861 (Pa. Super. 1998) (holding that sufficiency claims are not cognizable under the PCRA); 42 Pa.C.S. § 9543 (setting forth the eligibility requirements for PCRA relief)).

On the merits of the claim, the Commonwealth argues, Appellant's assault by a life prisoner conviction was not vitiated by the court's vacation of his predicate murder sentence of a mandatory term of life imprisonment without parole. It asserts that the Superior Court correctly held that Appellant was serving a sentence of life imprisonment

that had not been commuted when he committed the prison assault. Relying on the text of Section 2704, the Commonwealth submits that it is the existence of a life sentence at the time of the prison assault, without regard to any future occurrences, that is an element of the crime. Brief for Appellee at 28 (citing 18 Pa.C.S. § 2704, which encompasses any "person who has been sentenced to . . . life imprisonment").

The Commonwealth emphasizes that there is no modifier or qualifying language present, and there is no restriction on the scope of the term "sentenced." According to the Commonwealth, Section 2704 does not require a "valid" sentence, nor one that is immune from collateral constitutional challenge. Thus, the Commonwealth submits, the fact that the predicate life-without-parole sentence for murder was subsequently deemed unconstitutional in light of *Miller* and *Montgomery* did not render the predicate life sentence void *ab initio* or invalidate his conviction for a prison assault he committed when he was 25 years' old. *Id.* at 29 (citing *Ciccone*, 152 A.3d at 1009 (holding that while the mandatory minimum sentencing statute was rendered illegal by *Alleyne*, *supra*, the statute was constitutional at the time the defendant was sentenced and, thus, was not void from inception)).

As did the Superior Court, the Commonwealth finds support for its position in cases involving challenges to convictions of firearms statutes, where the convictions were sustained notwithstanding challenges to the underlying predicate offense. Brief of Appellee at 29-30 (collecting cases). Similarly here, the Commonwealth reiterates, Section 2704 directs that a conviction of assault by a life prisoner is dependent upon the existence of the predicate life sentence at the time of the prison assault and not the validity or reliability of the predicate life sentence.

Additionally, as did the Superior Court, the Commonwealth maintains that its position is furthered by recognizing the purpose of Section 2704, which is to deter

prisoners already serving life sentences from committing assaults in prison. Brief for Appellee at 31 (citing *Dessus*, 396 A.3d at 1257). It agrees with the Superior Court's sentiment that deterrence can apply only to the situation existing and known to the defendant at the time of the assault and that "the deterrent value of the statute's life sentence would be strongest if it applies to assaults committed under a life sentence that was later vacated." *Cobbs*, 230 A.3d at 393. The Commonwealth reasons that this is true because a life sentence for a prison assault technically imposes no additional punishment on a defendant who continues to serve an earlier life without parole sentence, but it does impose an additional serious consequence if the underlying life sentence is later vacated or reduced.

The Commonwealth also disputes Appellant's reliance on this Court's decision in *McIntyre*, *supra*, because in that case, this Court reversed the defendant's judgment of sentence imposed for failing to register as a sex offender under 18 Pa.C.S. § 4915, after that statute had been declared unconstitutional. This Court held that it could not uphold the conviction and sentence because "there was no validly-enacted criminal statute on which the Commonwealth could base [a]ppellant's conviction." *Id*. at 619. In the instant case, the Commonwealth contends, there was a validly-imposed criminal sentence on which to base Appellant's assault by a life prisoner sentence because at the time of the prison assault, he was serving a sentence of life imprisonment without parole, that had not been commuted.[13]

---

[13] The Commonwealth further discounts Appellant's assertion that in other Pennsylvania trial court cases, individuals under identical circumstances have already been released or will be eligible for release upon their resentencing. *See* n. 11, *supra*. It maintains that because these trial court cases are non-precedential and unpersuasive due to the lack of information about them in the certified record on appeal in this case, they should not be considered by this Court in resolving this appeal.

Next, the Commonwealth posits that even if Appellant's assault by a life prisoner conviction was invalidated when the court vacated his predicate murder sentence of life imprisonment without parole, Appellant continues to serve a life sentence after having been resentenced to 40 years to life imprisonment. The Commonwealth argues that a sentence of 40 years to life imprisonment constitutes a life sentence for purposes of Section 2704 because the maximum sentence represents the actual legal sentence imposed for a criminal offense, with the minimum term merely setting the date for potential parole. Brief for Appellee at 24-5 (citing *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 302 (Pa. 2003) (providing that "[p]ursuant to Pennsylvania law, the maximum term represents the sentence imposed for a criminal offense, with the minimum term merely setting the date after which a prisoner may be paroled"); *Commonwealth v. Daniel,* 243 A.2d 400, 403 (Pa. 1968) (providing that "whether a sentence is stated in terms of minimum and maximum or is for a purely indeterminate term, the maximum sentence is the real sentence")). The Commonwealth concludes that because the only component of Appellant's sentence that has legal validity is the maximum sentence of life imprisonment, which he continues to serve, his Section 2704 conviction for assault by a life prisoner remains intact.

Acknowledging that Section 2704 does not apply where a prisoner's life sentence has been commuted at the time of the assault, the Commonwealth emphasizes that Appellant's predicate life sentence was never commuted, as only the Governor has the authority to commute a sentence upon a recommendation from the Board of Pardons of the Commonwealth, and not the courts. Brief for Appellee at 26 (citing 37 Pa. Code §§ 81.202, 81.211). Accordingly, the Commonwealth requests that we affirm the

judgment of the Superior Court, which affirmed the PCRA court's order dismissing Appellant's PCRA petition.[14]

In his reply brief, Appellant refutes the Commonwealth's claim that his PCRA petition was filed untimely, and views the timeliness issue as outside the scope of this Court's order granting allocatur. Nevertheless, he cites with approval the Superior Court's holding that his PCRA petition was filed timely pursuant to the newly-recognized constitutional right exception to the PCRA time bar because it was filed within 60 days of the High Court's decision in *Miller*, and alleged a direct effect of the newly-recognized Eighth Amendment right not to be sentenced to a mandatory life sentence without parole as a result of an offense committed while a minor. Appellant further asserts that his PCRA petition was pending and was amended within 60 days of the High Court's ruling in *Montgomery*, which declared that *Miller's* holding was a substantive rule of constitutional law that applied retroactively. He posits that he could not have raised his claim any earlier because his predicate life sentence was not invalidated until *Miller* and *Montgomery* were decided in 2012 and 2016, respectively.

Appellant further disputes the Commonwealth's contention that his claim is not cognizable under the PCRA. He clarifies that his claim is unlike a sufficiency challenge because it does not involve the evidence that was before the jury at his trial, as the jury

---

[14] The Pennsylvania District Attorneys Association ("PDAA") has filed an *amicus* brief in favor of the Commonwealth. Therein, the PDAA reiterates the Commonwealth's contention that Appellant's conviction under Section 2704 is not vitiated by the vacation of his predicate murder sentence of life imprisonment without parole because he was serving a life sentence at the time of the prison assault. It further maintains that Appellant's resentencing on the murder charge to 40 years to life imprisonment remains a life sentence because the maximum sentence is the actual legal sentence. Emphasizing that the purpose of Section 2704 is to deter those serving life sentences from committing further violent acts while incarcerated, the PDAA asserts that if an adult offender's underlying life sentence is subsequently commuted or vacated, the offender runs the risk of still being subject to life imprisonment without parole should he engage in violent behavior while incarcerated.

could not have contemplated the later-recognized constitutional rights that dramatically altered his status as a life prisoner. To the contrary, Appellant explains, he is raising a cognizable challenge to his conviction and illegal sentence imposed for assault by a life prisoner after his predicate life sentence was invalidated and rendered a legal fiction by *Miller* and *Montgomery*. Reply Brief for Appellant at 3 (citing 42 Pa.C.S. § 9542 (providing that "[t]his subchapter [of the PCRA] provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief").

Addressing the Commonwealth's response to the merits of his PCRA claim, Appellant reiterates that his new sentence of 40 years to lifetime imprisonment does not constitute "life imprisonment" for purposes of Section 2704 because it is a term-of-years sentence that allows for parole. He maintains that none of the cases cited by the Commonwealth in support of the proposition that his new sentence constitutes life imprisonment for purposes of Section 2704 actually involved that provision. Appellant further contends that the arguments set forth by *amicus* PDAA seek to broaden vastly the reach of Section 2704 to term-of-years sentences, despite clear language in Section 2704 limiting that provision to prisoners serving life sentences. Finally, he discounts the PDAA's assertion that because Section 2704 is meant to deter life prisoners from engaging in violent behaviors, it must apply here. Appellant concludes that the alleged deterrent purpose of Section 2704 cannot override an otherwise unconstitutional and illegal sentence.

*III. Analysis*

Our standard of review in an appeal involving a PCRA petition requires this Court to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Small*, 238

A.3d 1267, 1280 (Pa. 2020). The issues presented in this appeal require us to interpret both statutory and constitutional provisions. As these issues present questions of law, our review is *de novo*, and our scope of review is plenary. *Commonwealth v. Koehler*, 229 A.3d 915, 927 (Pa. 2020).

### A. Timeliness of Appellant's Claim[15]

As the Commonwealth asserts, the PCRA's timeliness requirements are jurisdictional in nature, and where a PCRA petition is filed untimely, courts lack jurisdiction to address the substantive claims raised therein. *Commonwealth v. Albrecht*, 994 A.2d at 1093. Accordingly, we shall entertain the Commonwealth's claim that the courts adjudicating this matter lack jurisdiction over Appellant's PCRA petition on timeliness grounds.

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). As found by the Superior Court, Appellant's judgment of sentence for his conviction of assault by a life prisoner became final in 1982, upon the expiration of the period for filing a petition for a writ of *certiorari* with the United States Supreme Court following this Court's denial of his petition for allowance of appeal.

Thus, Appellant's PCRA petition filed decades later in 2012 was facially untimely, and he could establish jurisdiction in the PCRA court only by pleading and proving the

---

[15] Contrary to the dissent's assertions, we evaluate the timeliness of Appellant's PCRA petition prior to addressing the merits thereof. *See* Dissenting Opinion at 5 (stating that "the majority first answers the substantive question presented on the merits and then says that answer resolves the preliminary question of jurisdiction").

application of an exception to the PCRA's time bar. As noted throughout, Section 9545(b)(1)(iii) provides an exception to the one-year filing requirement where the petitioner alleges and proves that "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S. § 9545(b)(1)(iii). At the time Appellant filed the instant PCRA petition, Section 9545(b)(2) required that a PCRA petition invoking an exception to the time bar "be filed within 60 days of the date the claim could have been presented."[16] *Id.* § 9545(b)(2).

We reiterate that the United States Supreme Court decided *Miller* on June 25, 2012, recognizing for the first time that mandatory life imprisonment without parole is unconstitutional for crimes committed when the defendant was under 18 years of age. The High Court in *Montgomery*, decided on January 25, 2016, expressly held that this new right applied retroactively. Appellant's PCRA petition was filed on August 20, 2012, 56 days after *Miller* was decided, and his petition remained pending before the PCRA court when *Montgomery* was decided. Appellant challenged his assault by a life prisoner conviction and sentence in his PCRA petition on the ground that *Miller* and *Montgomery* invalidated the predicate offense on which his conviction and sentence was based. Thus, Appellant clearly asserted a constitutional right that was recognized by the Supreme Court of the United States and was held to apply retroactively after the one-year time period for filing a PCRA petition had expired.

We respectfully reject the Commonwealth's argument that Appellant's PCRA petition is untimely because *Miller* and *Montgomery* have no application to this PCRA

---

[16] As referenced *supra* at n.6, the Legislature subsequently extended this period from 60 days from the date the claim could have been presented to one year from that time.

matter due to the fact that Appellant was an adult at the time he committed the prison assault. This contention fails as Appellant asserted in his PCRA petition that his conviction and sentence for assault by a life prisoner had retroactively been deemed invalid as a matter of law by the High Court's decisions in *Miller* and *Montgomery*. Because Appellant's assertion in this regard was included in his amended PCRA petition, which he filed with leave of court within the requisite time period after *Montgomery* was decided, his claim falls squarely within the newly-recognized constitutional right exception to the PCRA time bar set forth in Section 9545(b)(1)(iii). Accordingly, Appellant's PCRA petition was filed timely, and both the PCRA court and Pennsylvania's appellate courts have jurisdiction to entertain the merits of his claim.[17]

---

[17] Respectfully, the dissent's reliance upon *Commonwealth v. Spotz*, 171 A.3d 675 (Pa. 2017), to support a contrary conclusion is misguided. In both *Spotz* and the instant case, the PCRA petitioner filed a facially untimely PCRA petition and attempted to invoke the newly-recognized constitutional right exception to the PCRA's timeliness requirement by relying upon a recent United States Supreme Court ruling that was held by that Court, in a subsequent decision, to apply retroactively on collateral appeal. The similarities between *Spotz* and the instant case end there. In *Spotz*, the High Court ruling that was held to apply retroactively declared that a particular federal sentencing statute was unconstitutionally vague in violation of due process. Adjudicating the petitioner's appeal from the denial of PCRA relief, this Court found that because the petitioner was not sentenced under that federal statute and, instead, was sentenced under a state statute, there was no constitutional "right" that the petitioner could assert. *Id.* at 681-82. Accordingly, we held that the petitioner did not satisfy the newly-discovered constitutional right exception to the PCRA's timeliness requirement; thus, this Court lacked jurisdiction over the PCRA petition. *Id.* at 682.

The instant case is completely distinguishable. Unlike the retroactive invalidation of a sentencing statute that had no application to the petitioner, the retroactive application of *Miller* applied directly to Appellant, invalidating his mandatory life sentence imposed for a murder committed while he was a juvenile, which served as the basis for his current collateral challenge to his conviction of assault by a life prisoner. Thus, as required expressly by *Spotz*, the newly-recognized constitutional right established here by the United States Supreme Court in *Miller* and *Montgomery* "actually [ ] touch[ed] upon the facts or procedure that resulted either in the petitioner's conviction or sentence." *Spotz*, 171 A.3d at 727-28. For this reason, we find unpersuasive the dissent's contrary characterization of *Spotz* as radically narrowing our interpretation of the newly-recognized constitutional right exception. We do so, adhering to the well-established principle that

We further decline the Commonwealth's invitation to dismiss this appeal on the ground that Appellant fails to raise a cognizable claim under the PCRA. *See* 42 Pa.C.S. § 9543 (setting forth the eligibility requirements for PCRA relief). This Court did not grant allowance of appeal on that issue, and unlike the Commonwealth's challenge to the timeliness of Appellant's PCRA petition, this contention does not implicate jurisdictional concerns. *See Commonwealth v. Fields*, 197 A.3d 1217, 1222 (Pa. Super. 2018) (holding that Section 9543's eligibility provision implicates the petitioner's ability to obtain a remedy through post-conviction proceedings, and not the jurisdiction of the PCRA court to act on a petition because the General Assembly placed the timeliness restrictions in Section 9545, entitled "Jurisdiction and proceedings," and did not include eligibility requirements in that provision). Moreover, we observe that Appellant's claim that the High Court's constitutional rulings in *Miller* and *Montgomery* invalidated his conviction and sentence for assault by a life prisoner falls under Section 9543(a)(2)(i), which recognizes as cognizable a claim that a petitioner's conviction or sentence results from a "violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i).

### B. Merits of Appellant's Claim

"the holding of a judicial decision is read against its facts." *Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021).

Additionally, our holding in the instant case comports with this Court's decision in *Commonwealth v. Reid*, 235 A.3d 1124 (Pa. 2020), which the dissent cites for the proposition that the plain text of the newly-recognized constitutional right exception requires that the ruling regarding the retroactive application of the new constitutional law exist at the time the PCRA claim is forwarded. *See* Dissenting Opinion at 5 (citing *Reid*, 235 A.2d at 1161). Unlike in *Reid*, where there was no ruling as to whether the new constitutional law applied retroactivity, here, the High Court has already decided in *Montgomery* that *Miller's* ruling applies retroactively on collateral appeal.

As recognized by the Superior Court, to determine the constitutional validity of Appellant's conviction of assault by a life prisoner and his resultant life sentence without parole, we must answer two separate inquiries: (1) whether the vacation of the predicate life sentence imposed for murder vitiates the conviction and sentence for assault by a life prisoner, and if so; (2) whether Appellant's new sentence of 40 years to life on the murder conviction renders Appellant a life prisoner for purposes of Section 2704.

*1. Invalidation of Predicate Life Sentence for Murder*

We begin our analysis with the High Court's seminal decision in *Miller*, *supra*. *Miller* addressed two consolidated cases, each involving the imposition of life imprisonment without parole for a murder committed by a 14-year-old boy. In the first case, Kuntrell Jackson and two other boys participated in a robbery of a video store, during which the store clerk was fatally shot. Jackson did not fire the weapon and stayed outside the store as the robbery occurred. Notwithstanding, Jackson was convicted of capital felony murder, which carried a mandatory term of life imprisonment without parole.

In the second case, Evan Miller and another boy attempted to rob a man who had passed out, but awoke as the boys were returning his wallet to his pocket. After the man grabbed Miller by the throat, the boys repeatedly struck him in the head with a baseball bat. The boys then set fire to the trailer in which the robbery occurred. The man died from his injuries and smoke inhalation. Miller was subsequently convicted of murder in the course of arson, which carried a mandatory term of life imprisonment without parole.

The issue presented to the High Court for review was whether the imposition of a mandatory sentence of life imprisonment without parole upon the two juveniles violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Court answered the inquiry in the affirmative based upon two strands of precedent that reflect the Court's concern for proportionate punishment. *Miller*, 567 U.S. at 470. The first line

of precedent "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* Cases in this category included, *inter alia*, *Graham v. Florida*, 560 U.S. 48, 60-61 (2010), which held that a sentence of life without parole violates the Eighth Amendment when imposed upon juvenile non-homicide offenders, and *Roper v. Simmons*, 543 U.S. 551 (2005), which held that a sentence of death imposed upon an individual who was a minor at the time the offense was committed violated the Eighth Amendment.

Regarding this line of cases, the Court reasoned that children are constitutionally distinct from adults for sentencing purposes due to their diminished culpability and greater prospects for reform, which render them less deserving of the most severe penalties. *Miller*, 567 U.S. at 471 (citing *Graham*, 560 U.S. at 68). The Court observed that unlike adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility," which leads to "recklessness, impulsivity, and heedless risk-taking." *Id.* (citing *Roper*, 543 U.S. at 569). The Court further noted that children are more vulnerable to outside pressures and negative influences, have limited control over their environment, and their character is not as well-formed as that of an adult. *Id.* Additionally, the Court found that the case for retribution or deterrence is not as strong with a minor because the very characteristics that render them less culpable than adults, *i.e.*, their immaturity, recklessness, and impetuosity, also make them less likely to consider potential punishment. *Miller*, 567 U.S. at 472 (citing *Graham*, 560 U.S. at 72; *Roper*, 543 U.S. at 571). Thus, the Court opined that "youth matters when determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.* at 473.

The second line of precedent relied upon by the High Court prohibited the mandatory imposition of capital punishment and, instead, required sentencing authorities to "consider the characteristics of a defendant and the details of his offense before

sentencing him to death." *Miller*, 567 U.S. at 470 (citing *Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality) (holding that mandatory sentences for capital offenses that precluded the jury from considering the character and record of the offender and the circumstances of the offense violated the Eighth and Fourteenth Amendments) and *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality) (deeming unconstitutional an Ohio death penalty statute that did not permit the type of individualized consideration of mitigating factors required by the Eighth and Fourteenth Amendments in capital cases)).

The High Court concluded that "the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Miller*, 567 U.S. at 470. The Court explained that a mandatory sentence of life without parole for a juvenile precludes consideration of: the youth of the offender and the features of that stage of development; the juvenile's family and home environment; the circumstances of the offense such as the extent of the juvenile's participation in the criminal conduct and the pressures that may have affected that participation; that the juvenile may have been convicted of a lesser offense if not for the implications resulting from youth; and the possibility that the juvenile may become rehabilitated. *Id.* at 477-78.

Finding that the consolidated appeals before it illustrated the inadequacies of imposing mandatory life imprisonment without parole upon juveniles, the Court emphasized that 14 year-old Jackson did not fire the bullet that killed the murder victim and his conviction was based upon an aiding-and-abetting theory, while 14 year-old Miller committed the murder while high on drugs and alcohol and while enduring a significantly troubled childhood. *Id.* at 478-79. Thus, the Court concluded that the Eighth Amendment's ban on cruel and unusual punishment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" because such

sentencing paradigm "poses too great a risk of disproportionate punishment." *Id.* at 479.

The Court explained that it was not foreclosing the imposition of a life sentence without

parole on juveniles, acknowledging that such practice would be "uncommon" and

imposed upon the "rare juvenile offender whose crime reflects irreparable corruption."[18]

*Id.* at 479-80. Significantly, the Court clarified that mandatory life imprisonment without

parole could not be imposed upon minors absent an individualized consideration of "how

---

[18] Contrary to this Court's decision in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017), which established criteria for sentencing a juvenile to life imprisonment without parole for murder, the Supreme Court in *Jones v. Mississippi*, 141 S.Ct. 1307 (2021), recently held that *Miller* does not require the sentencing court to make a separate finding of permanent incorrigibility before imposing a life-without-parole sentence upon a minor for murder. *Id.* at 1314-15. The Court upheld Jones' sentence of life imprisonment without parole against an Eighth Amendment challenge because the sentence was not mandatory, as the trial court had the opportunity to consider the impact that Jones' youth had on his decision to commit murder. *Id.* at 1313. The Court's ruling in *Jones* has no effect on this appeal, as the High Court in *Jones* expressly left undisturbed both *Miller's* holding that a state may not impose upon a minor a *mandatory* life-without-parole sentence, which was imposed here, and *Montgomery's* holding that such ruling applies retroactively on collateral review.

The dissent disputes this conclusion, emphasizing sentiments set forth in responsive opinions filed in *Jones*. *See* Dissenting Opinion at 9-10 n.6 (citing *Jones*, 141 S.Ct. at 1327 (Thomas, J., concurring) (opining that the *Jones* majority "[o]verrule[d] *Montgomery* in substance but not in name"); *id.* at 1328 (Sotomayor, J., dissenting) (stating that "Today, the Court guts *Miller* . . . and *Montgomery*")). Respectfully, the dissent is mistaken, as its position that *Jones* altered *Montgomery's* ultimate holding is belied by the clear language employed in the *Jones* decision stating that the Court's "decision today does not disturb *Montgomery's* holding that *Miller* applies retroactively on collateral review." *Id.* at 1318 n.4. While the *Jones* Court questioned *Montgomery's* analysis regarding how it reached the conclusion that *Miller* set forth a substantive rule of constitutional law that applies retroactively on collateral appeal, it did so for the exclusive purpose of guiding future cases not involving *Miller*, and, in doing so, did not alter the legal conclusion itself. *See id.* at 1317 n.4 (stating that "to the extent that *Montgomery's* application of the *Teague* standard is in tension with the Court's retroactivity precedents that both pre-date and post-date *Montgomery*, those retroactivity precedents - and not *Montgomery* - must guide the determination of whether rules other than *Miller* are substantive"). Thus, our reliance upon *Montgomery infra*, for the proposition that *Miller* set forth a substantive rule of constitutional law that applies retroactively on collateral appeal, remains sound.

children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

Less than four years after *Miller* was decided, the High Court in *Montgomery* examined "whether *Miller* adopts a new substantive rule that applies retroactively on collateral review to people condemned as juveniles to die in prison." *Montgomery*, 136 S.Ct. at 727. The Court began its analysis by examining the framework for retroactivity in federal collateral review cases as set forth in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality), which recognized that new constitutional rules of criminal procedure do not apply to convictions that were final when the new rule was announced (except for watershed rules of criminal procedure that implicate the fundamental fairness of the criminal proceeding), but that new substantive rules of constitutional law must be given retroactive effect. *Montgomery*, 136 S.Ct. at 728.

Relying upon *Ex parte Siebold*, 100 U.S. 371 (1880), the *Montgomery* Court opined that a "conviction or sentence imposed in violation of a substantive rule is not just erroneous, but contrary to law and, as a result, void." *Montgomery,* 136 S.Ct. at 731 (citing *Siebold*, 100 U.S. at 376). Thus, the Court continued, a court generally has "no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Id.*

The Court explained that a substantive rule, as opposed to a procedural one, prohibits "criminal punishment of certain primary conduct" or precludes "a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 732 (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). Categorizing the "foundational stone" of the *Miller* decision as the recognition that certain punishments are disproportionate when applied to juveniles, the Court in *Montgomery* opined that the

"[p]rotection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment and goes far beyond the manner of determining a defendant's sentence." *Id.* at 732-33. The Court found that *Miller* did not only require consideration of a juvenile's youth before sentencing the juvenile to life imprisonment without parole, but the decision also declared that "the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Id.* at 734 (citing *Miller*, 567 U.S. at 472). The Court explained that *Miller* rendered mandatory life imprisonment without parole an unconstitutional penalty for a class of defendants, *i.e.*, juveniles. *Id.* Thus, the Court concluded, *Miller* declared a substantive rule of constitutional law that must be applied retroactively because it carries a significant risk that a juvenile defendant "faces a punishment that the law cannot impose on him." *Id.* (citation omitted).

The High Court acknowledged that Montgomery had spent each day of the past 46 years aware that he was condemned to die in prison for an offense he committed when he was a juvenile. Retroactive application of *Miller*, the Court opined, will provide for the opportunity for release for "those who demonstrate the truth of *Miller's* central intuition - that children who commit even heinous crimes are capable of change." *Id.* at 736. Accordingly, the Court held, Montgomery and others like him must be afforded the opportunity to demonstrate that their crimes did not reflect irreparable corruption. *Id.* at 737. If they succeed in that regard, the Court asserted, "their hope for some years of life outside prison walls must be restored." *Id.* at 737.

The import of these decisions is clear. First, under *Miller*, the imposition of a mandatory sentence of life imprisonment without parole for an act committed when the offender was a minor violates the Eighth Amendment's prohibition against cruel and unusual punishment because it precludes the sentencing body from considering the characteristics of youth in conjunction with the individualized circumstances of the

offense. Absent a consideration of how children are different and how those differences counsel against irrevocably sentencing an offender to life imprisonment for acts committed as a minor, there is simply "too great a risk of disproportionate punishment." *Miller*, 567 U.S. at 479.

Second, and critical to our analysis in this PCRA appeal, is *Montgomery's* declaration that *Miller's* holding constitutes a substantive rule of constitutional law that applies retroactively on collateral review. As emphasized by Appellant, the Court in *Montgomery* held expressly that a "conviction or sentence imposed in violation of a substantive rule is not just erroneous, but contrary to law and, as a result, void," and that a court generally has "no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Montgomery,* 136 S.Ct. at 731 (citing *Siebold*, 100 U.S. at 376).

Applying this jurisprudence to the facts presented, it is inescapable that the vacation of Appellant's predicate life sentence on grounds that it violated the Eighth Amendment vitiates Appellant's subsequent conviction and sentence for assault by a life prisoner. It is beyond cavil that a critical element of the offense of assault by a life prisoner is the offender's status as an individual who has been sentenced to life imprisonment. *See* 18 Pa.C.S. § 2704 (defining the offense of assault by a life prisoner as aggravated assault with a deadly weapon or instrument by an individual "who has been sentenced to death or life imprisonment" and whose sentence "has not been commuted"). By recognizing the retroactive Eighth Amendment prohibition on mandatory sentences of life imprisonment without parole for offenses committed by juveniles, *Miller* and *Montgomery* undermine Appellant's Section 2704 conviction and sentence, which were predicated on his illegal and, thus, void mandatory sentence of life imprisonment imposed for murder. Due to the retroactive application of *Miller's* substantive holding as required

by *Montgomery*, Appellant was never a life prisoner and, thus, could not, consistent with due process, be convicted or punished as one pursuant to Section 2704. Accordingly, we cannot uphold Appellant's assault by a life prisoner conviction and sentence after his predicate life sentence was rendered illegal and, therefore, void.[19]

We acknowledge that Appellant was a 25 year-old adult at the time he committed the assault upon his fellow prisoner in 1979. As demonstrated, however, it is equally clear, indeed undeniable, that the mandatory sentence of life imprisonment without parole imposed for the Section 2704 conviction derived directly from the murder Appellant committed as a juvenile, for which he was illegally sentenced to a mandatory term of life imprisonment without parole.

This Court reached a somewhat similar conclusion in *McIntyre*, *supra*, which involved a challenge to a conviction and sentence arising from a statute that had been deemed unconstitutional in its entirety due to the manner by which it was enacted and, thus, was deemed void from the date it became effective. The Court in *McIntyre* opined that allowing the conviction to stand would violate due process because there was no validly enacted criminal statute upon which the Commonwealth could base a conviction. *McIntyre*, 232 A.3d at 619. Here, the illegality does not arise from an inherent defect in the statute itself, but rather from an unconstitutional application of the statute, as the predicate life sentence upon which Appellant's Section 2704 conviction and sentence is based is illegal, and, thus, void. Nevertheless, as in *McIntyre*, application of Section 2704

---

[19] We are unpersuaded by the Commonwealth's reliance on the Superior Court's decision in *Ciccone*, *supra*, which held that a statute that was abrogated by a subsequent change in the law was not rendered void *ab initio*. *Ciccone* did not address whether a sentence rendered invalid by a retroactively applied constitutional right is void *ab initio* as the relevant claim in *Ciccone* arose from a change in the law resulting from the High Court's decision in *Alleyne*, *supra*, which was held expressly not to apply retroactively on collateral review.

violates Appellant's due process rights as his conviction thereunder was predicated on an illegal sentence.

Respectfully, the Superior Court's holding to the contrary based upon the text and purpose of Section 2704 is unsupportable as the General Assembly's specific intent in drafting a statute and the particular language employed cannot immunize the statute from a challenge to its unconstitutional application. While engaging in a plausible statutory interpretation analysis, the Superior Court failed to appreciate the significance of the constitutional concerns presented by Appellant, namely that *Miller* prohibits the imposition of a mandatory life sentence without parole for an act committed by a minor, that *Montgomery* held expressly that such holding constitutes a substantive rule of constitutional law that applies retroactively on collateral review, and that a critical element of a Section 2704 conviction is Appellant's life-prisoner status, which is now void because it arose from his illegal mandatory life sentence imposed for a murder committed when he was a juvenile. These constitutional concerns are dispositive of this appeal.

Our holding herein is not inconsistent with the High Court's decision in *Lewis v. United States*, *supra*, upon which the Superior Court relied in sustaining Appellant's Section 2704 conviction and sentence. In 1977, Lewis was convicted pursuant to a statute that precluded any person from receiving or possessing a firearm "who had been convicted by a court of the United States or of a State or any political subdivision thereof of a felony." *Lewis*, 445 U.S. at 56 (citing 18 U.S.C. § 1202(a)(1) (since repealed)). Lewis' predicate felony was a 1961 conviction for breaking and entering with the intent to commit a misdemeanor. On appeal from his firearm conviction, Lewis contended that his conviction could not be predicated on his 1961 felony because he had been denied his constitutional right to counsel at the felony proceeding in violation of *Gideon v. Wainwright*, 374 U.S. 335 (1963). *Lewis*, 445 U.S. at 57-58. Critically, unlike the instant

case, neither Lewis' predicate felony conviction nor his related sentence had ever been set aside or reversed. *Id.* at 57.

The Supreme Court rejected Lewis' attempt to attack collaterally his predicate felony during the litigation of the firearm offense. Initially, the Court observed the firearm statute's legislative history demonstrating an intent to keep guns out of the hands of those who may not be trusted to possess them without becoming a threat to society. *Id.* at 63. It further acknowledged that the statutory scheme as a whole imposed the civil disability of precluding the possession of firearms not only on the convicted felon, but also on a person under felony indictment. *Id.* at 64. Examining the statutory text, the Court held that the firearm provision depended exclusively upon the existence of the predicate felony and not the reliability thereof. *Id.* at 67. The Court concluded that the statute "prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds." *Id.* at 65. Recognizing that a convicted felon may challenge the validity of his prior conviction or take action to remove his disability before obtaining a firearm, the Court explained, "[w]e simply hold today that the firearms prosecution does not open the predicate conviction to a new form of collateral attack."[20] *Id.*

The instant appeal is clearly distinguishable as Appellant has already successfully challenged his predicate sentence of life imprisonment required for his Section 2704 conviction, and that life sentence has been declared illegal and, therefore, is null and void under the Eighth Amendment due to *Montgomery's* holding that *Miller's* ruling constitutes a substantive constitutional rule that applies retroactively to collateral attacks. Moreover,

---

[20] Germane here, although not directly before it as the predicate felony had not been overturned, the *Lewis* Court acknowledged in *dicta* that if the predicate felony had been finally reversed on appeal, it could not serve as a predicate felony for the firearm offense. *Lewis*, 455 U.S. at 61 n.5.

we observe that the statutes involved in the two cases are dissimilar, as the firearm statute in *Lewis* imposed a civil disability upon an individual who was convicted of a predicate felony conviction based on the existence, and not reliability, of the predicate conviction. Section 2704, to the contrary, imposes the ultimate restraint on liberty, *i.e.*, a lifetime of imprisonment, based upon the life-sentence status of the prisoner, so long as that life sentence has not been commuted. *See* 18 Pa.C.S. § 2704 (defining the offense of assault by a life prisoner as aggravated assault with a deadly weapon or instrument by an individual "who has been sentenced to death or life imprisonment" and whose sentence "has not been commuted"). This statutory language indicates a legislative intent to consider not only the existence of the conviction, but also its reliability, and to exempt those who are eligible for parole from the sentencing requirements of Section 2704.

For these same reasons, we also find unpersuasive the Superior Court's reliance upon this Court's *dicta* in *Commonwealth v. Stanley*, 446 A.2d 583 (Pa. 1982), that a subsequent reversal of a murder conviction on which an illegal possession of firearms charge was predicated did not affect the firearms offense because the defendant "was an individual convicted of a 'crime of violence' at the time he was charged with possessing the firearm." *Id.* at 588 n.6.

Accordingly, Appellant's illegal mandatory sentence of life imprisonment without parole imposed for a murder committed while he was a juvenile cannot constitutionally serve as the predicate life sentence required for an assault by a life prisoner conviction under Section 2704.

*2. Examination of New Sentence Imposed*

We must next examine whether Appellant's new sentence of 40 years to life imposed for his murder conviction constitutes a sentence of "life imprisonment" under

Section 2704. The text of Section 2704 ("Assault by life prisoner") bears repeating, and, as noted, provided the following at the time of Appellant's assault:

> Every person who has been sentenced to death or life imprisonment in any penal institution located in this Commonwealth, and whose sentence has not been commuted, who commits an aggravated assault with a deadly weapon or instrument upon another, or by any means of force likely to produce serious bodily injury, is guilty of a crime, the penalty for which shall be the same as the penalty for murder of the second degree.

18 Pa.C.S. § 2704.

Our inquiry is a narrow question of statutory construction, *i.e.*, whether the term "life imprisonment" as employed in Section 2704 was intended to encompass exclusively sentences of life imprisonment without parole, or whether the term encompasses sentences that allow for parole eligibility by imposing a minimum sentence of a term of years of incarceration with a maximum sentence of life imprisonment, such as Appellant's new murder sentence of 40 years to life.

Because this issue involves statutory construction, our objective "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When interpreting statutory text, we give significant weight to the plain language of the statute because it is "the best indicator of legislative intent." *Freedom Med. Supply v. State Farm Fire and Cas. Co.*, 131 A.3d 977, 983 (Pa. 2016) (internal citation and quotation omitted). Where the text of the statute is not explicit, we glean the General Assembly's intention by examining various factors such as the occasion for the provision, the context in which it was passed, the mischief it was designed to remedy, and the object it sought to attain. 1 Pa.C.S. § 1921(c).

As noted, Appellant posits that a sentence of "life imprisonment" under Section 2704 could only denote a life sentence without parole because that is how the term was understood in Pennsylvania jurisprudence when Section 2704 was enacted. Prior to the

High Court's decision in *Miller* in 2012, he argues, an offender could only be paroled from a life sentence though a commutation issued by the Governor, and that it was not until 2012, that the High Court created in *Miller* an additional mechanism for the reduction of life sentences through resentencing of individuals serving mandatory juvenile sentences of life without parole. Appellant maintains that the specific exclusion in Section 2704 for those offenders whose life sentences have been commuted demonstrates that the General Assembly intended to exempt those who are eligible for parole (*i.e.*, non-life prisoners) from the most severe sentencing requirements of Section 2704. Thus, Appellant concludes, his new sentence of 40 years to life imposed at resentencing allows for parole eligibility and, thus, is insufficient to render him a "life prisoner" for purposes of Section 2704.

The Commonwealth reiterates its position that Appellant's new sentence of 40 years to life constitutes a sentence of life imprisonment under Section 2704. It characterizes Appellant's initial sentence of life without parole as a determinate life sentence, and his new sentence of 40 years to life as an indeterminate life sentence.[21] Either way, the Commonwealth contends, the punishment constitutes a sentence of "life imprisonment" under Section 2704 because, in Pennsylvania, the maximum sentence represents the actual legal sentence imposed for a criminal offense, with the minimum term merely setting the date for potential parole. Brief for Appellee at 24-5 (citing *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 302 (Pa. 2003) (providing that "[p]ursuant to

---

[21] In *Commonwealth v. Yuhasz*, 923 A.2d 1111 (Pa. 2007), this Court explained that an indeterminate sentencing scheme features a discretionary parole release where the judge imposes a sentence with two numbers, *i.e.*, the earliest time that the defendant will be eligible for parole release and the latest date upon which the defendant may be released, while a determinate sentencing scheme does not feature a discretionary parole release and, instead, takes the form of a single release date. *Id.* at 1114-15. While Pennsylvania generally has an indeterminate sentencing scheme, *id.* at 1117, the sentence of life imprisonment is a determinate sentence.

Pennsylvania law, the maximum term represents the sentence imposed for a criminal offense, with the minimum term merely setting the date after which a prisoner may be paroled"); *Commonwealth v. Daniel,* 243 A.2d 400, 403 (Pa. 1968) (stating that "whether a sentence is stated in terms of minimum and maximum or is for a purely indeterminate term, the maximum sentence is the real sentence")).  The Commonwealth concludes that the only component of Appellant's sentence that has legal validity is the maximum sentence of life imprisonment, which Appellant continues to serve; therefore, the Commonwealth submits that his Section 2704 conviction for assault by a life prisoner remains intact.

Initially, we find that the term "life imprisonment" as employed in Section 2704 is ambiguous, as we conclude that each party has offered a reasonable interpretation of the statutory language on its face.  Thus, in addition to the statutory text, we also examine the occasion for the statute, the context in which it was passed, the mischief it was designed to remedy, and the object it sought to attain. 1 Pa.C.S. § 1921(c).

Section 2704 was enacted in 1972 "to specify mandatory life imprisonment as punishment for assaults committed by prisoners already serving life terms." *Bryant*, 361 A.2d at 352.  The significant punishment was intended to deter inmates who are serving the most severe sentences from committing assaults in prison without retribution.  *Id.; Dessus,* 396 A.2d at 1257.  The deterrence is aimed directly at those inmates who are "life prisoners" who would not receive any actual additional punishment if they were to engage in violent acts in a Commonwealth penal institution, considering that they are already serving the most severe sentences of death or life imprisonment.

This is apparent from the fact that the General Assembly enacted a separate provision for prison assaults committed by inmates who are not serving life sentences but, rather, a term-of-years sentence of incarceration.  *See* 18 Pa.C.S. § 2703 (providing

that except as provided under Section 2704, a person confined in a Commonwealth penal or correctional institution is guilty of a felony of the second degree if he, while confined, commits an assault on another with a deadly weapon or instrument, or by any means likely to produce serious bodily injury). This disparate treatment by the Legislature of inmates serving a life sentence and those serving a term-of-years sentence suggests that life-prisoner status in Section 2704 is reserved for those life prisoners ineligible for parole.

Moreover, as Appellant astutely observes, at the time Section 2704 was enacted, a sentence imposing a term of "life imprisonment" was understood as meaning exactly that, a lifetime of incarceration without parole. *See, e.g., Commonwealth v. Johnson,* 81 A.2d 569 (Pa. 1951) (holding that while accurate, it was prejudicial to inform the jury that "life imprisonment means what it says"). It cannot be ignored that a sentence imposing a minimum term of years of incarceration with a maximum term of lifetime incarceration simply did not exist in 1972, when the General Assembly enacted Section 2704. It was not until 2012, that the High Court set forth in *Miller* an additional mechanism for the reduction of life sentences, not through commutation, which is reserved for the executive branch, but through judicial resentencing of individuals serving unconstitutional mandatory juvenile sentences of life without parole.[22]

Accordingly, based upon the text, purpose, and context in which Section 2704 was enacted, we conclude that the General Assembly did not intend to prosecute and sentence as life prisoners those individuals who received a term-of-years sentence that

_____

[22] In response to *Miller*, the Pennsylvania Legislature amended the penalties for first and second degree murder for those under 18 years of age at the time of their offenses, and applied the new law to those juveniles convicted after June 24, 2012. 18 Pa.C.S. § 1102.1(a)(1),(2). Of relevance here, a person who was 15 years of age or older at the time of the commission of the offense shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life. A person who was under the age of 15 at the time of offense shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life.

allows for parole eligibility, even when that sentence has a maximum term of lifetime incarceration. By requiring life-prisoner status and providing an exemption for those whose life sentence had been commuted, we find that the General Assembly reserved the most stringent restriction of liberty available, *i.e.*, a penalty of lifetime incarceration, for those prison assaults committed by individuals who were sentenced to die in prison with no opportunity for parole. Thus, we hold that "life imprisonment" as employed in Section 2704 means a lifetime of incarceration without parole, as an inmate cannot simultaneously be both a life prisoner and parole eligible. To adopt the Commonwealth's interpretation of "life imprisonment" as encompassing a term-of-years sentence broadens the scope of Section 2704 beyond life prisoners, contrary to the General Assembly's directive.

We do not disagree with the Commonwealth that when examining an indeterminate sentence that provides both a minimum and maximum term, the maximum term represents the sentence imposed for a criminal offense, while the minimum term sets the date after which a prisoner may be paroled. *See Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d at 302 (observing the same while reviewing the time credited to an individual's sentence); *Commonwealth v. Daniel,* 243 A.2d at 403 (observing the same while reviewing a claim of gender discrimination in Muncy Act sentencing). This fact, however, sheds little, if any, light on the inquiry before us, which is to construe the meaning of the determinate sentence of "life imprisonment" as set forth by the General Assembly in Section 2704.

Accordingly, we hold that Appellant's new sentence of 40 years to life imprisonment does not constitute a sentence of "life imprisonment" for purposes of prosecuting and sentencing life prisoners for institutional assaults pursuant to Section 2704.

*IV. Conclusion*

In summary, we conclude that Appellant's PCRA petition was filed timely and that he raised a cognizable claim under the PCRA, thereby affording the courts jurisdiction to adjudicate his petition. We further hold that by recognizing the retroactive Eighth Amendment prohibition on mandatory juvenile life without the possibility of parole sentences, *Miller* and *Montgomery* undermined the reliability of Appellant's conviction and sentence for assault by a life prisoner in violation of due process, as they were predicated on his illegal mandatory life sentence imposed for a murder he committed while he was a juvenile.

Having concluded that Appellant's conviction and sentence for assault by a life prisoner are invalidated by the High Court's rulings in *Miller* and *Montgomery*, we further hold that Appellant's new sentence of 40 years to life imprisonment imposed for his murder conviction does not constitute a sentence of life imprisonment for purposes of Section 2704. Accordingly, we vacate the Superior Court's judgment, which affirmed the PCRA court's order dismissing Appellant's PCRA petition. We further reverse the PCRA court's order and vacate Appellant's judgment of sentence and his related conviction under Section 2704.

Justices Saylor, Donohue and Wecht join the opinion.

Justices Saylor and Todd file concurring opinions.

Justice Dougherty files a dissenting opinion in which Justice Mundy joins.